OPINION OF THE COURT
Herbert Shapiro, J.
The petitioner in this tax certiorari proceeding, Metro-media Inc., is a corporation engaged in the business of erecting, leasing and maintaining outdoor advertising displays.
In 1964, petitioner acquired an advertising corporation that had an exclusive franchise agreement with the New York City Transit Authority (Authority) which agreement permitted the erection, maintenance and leasing of outdoor *1002 advertising displays on designated “El” structures. Upon the expiration of that agreement in 1971, petitioner and the Authority entered into a new agreement continuing petitioner’s exclusive right to display outdoor advertising on Authority structures.
In accordance with these franchise agreements, petitioner has erected and maintained advertising displays on Authority structures throughout the City of New York for the period commencing with its succession to the first franchise agreement in 1964 until the present time. Petitioner has 33 such advertising displays in Bronx County and commencing with the tax year 1974/1975 respondent has assessed them as real property for each of the five subsequent tax years.
In consequence the petitioner commenced six proceedings for review of the assessments. It now moves for consolidation and for summary judgment in its favor contending that the sign frames in question are not real property within the contemplation of the Real Property Tax Law and therefore may not be assessed as such. Respondent cross-moves for summary judgment in its favor confirming the assessments made. The fact that both parties so moved, in effect constitutes a bilateral admission that there are no issues of fact to be tried (Kuehne & Nagel v Baiden, 36 NY2d 539, 544). In any event, the court perceives no material issue of fact. As to the branch of petitioner’s motion seeking consolidation that relief is granted without opposition.
The typical advertising display employed by petitioner is composed of two over-all components — the sign frame and the sign face. (At this point it is to be observed that there is a question as to whether both components were originally deemed to be taxable real property. In any event, it is now agreed that only the sign frame is so classified by the respondents.) The sign frames are generally constructed of vertical and horizontal rails attached to each other by bolts. They also include catwalks, lighting fixtures and necessary support brackets to hold the sign face in place.
A number of legal arguments are made by both parties relative to the “taxability” of the sign frames. The first *1003 argument to be addressed is to the threshold contention of petitioner that the sign frames are not real property within the definitions to be found in the Real Property Tax Law.
Section 300 of the Real Property Tax Law subjects all real property to real property taxation and expressly exempts personal property from such ad valorem tax. Respondent contends that the definition of real property set forth in section 102 (subd 12, par [b]) of the Real Property Tax Law includes the sign frames and thus renders them taxable. That definition provides in pertinent part as follows : “ ‘Real Property’, ‘property’ or ‘land’ mean and include : * * * (b) Buildings and other articles and structures, substructures and superstructures erected upon, under or above the land or affixed thereto”.
Both parties appear to agree that whether a property falls within the statutory definition of what is taxable is to be determined by the tests set forth by the Court of Appeals in Matter of Consolidated Edison Co. of N. Y. v City of New York (44 NY2d 536, 541-542). Those tests were (1) the nature of the annexation of the property in question to the realty and (2) the intention of the parties with respect to whether there was to be a permanent addition to the realty.
To determine the nature of the annexation of the sign frame, one must look to the affidavits submitted on the motions. As indicated, in these affidavits there is no real dispute as to the facts, the only difference being in the emphasis applied by the parties to the significance of the various portions of the frame installation.
The display consists of two basic components — the sign face which bears the advertising message and the frame which supports the sign face. At this point, it is only the frame which is now sought to be assessed as real property. However, in order to present a full description of the advertising display some reference to the nature of the “sign face” and its installation process will be made.
The sign face is constructed of plywood sheets which when placed together edge to edge form the surface on *1004 which the advertising message is displayed. That message is either formed by printed poster sheets pasted on the plywood or by being painted directly on the plywood sheets. This work is done at the petitioner’s outdoor shop. The sign face is then transported to the street site where it is hoisted onto the sign frame, placed on a channel at the bottom of the frame and secured by metal clips so as to prevent the upper portion of the sign face from falling away from the frame.
The sign frame is constructed of vertical and horizontal steel members which are fastened to one another by means of nuts and bolts. The construction of the frame is commenced in the petitioner’s shop and the partially assembled sections are taken to the street site where they are hoisted to the display area. They are bolted together and the frame is then anchored by nuts and bolts to small metal plates which had earlier been welded to the side of the elevated railroad station.
The respondent argues, as it must to prevail, that the sign frame is “annexed” to the “El” superstructure within the meaning of the language of the Court of Appeals in Matter of Consolidated Edison Co. of N. Y. v City of New York (supra). In so arguing, respondent points to the fact that the sign frame is connected to the superstructure by means of small metal plates, which plates are welded to the superstructure. Additionally, it notes the fact that the displays are lighted and thereby involve electrical connections and fixtures. It is further pointed out that most of the display frames involved have not in fact been removed during the 15-year period since their installation.
The petitioner, on the other hand, argues that albeit the metal plates (3" x 3" in size) are welded to the “El” superstructure, the frame itself is attached merely by bolting the sign frame to the plates. As a result, the removal of the frame merely involves the removal of the nuts and bolts from the welded plates — a relatively simple operation which causes no damage to the superstructure.
In the light of the aforesaid facts, the court concludes that the method here employed is such as to fail to meet the test of “affixation”.
There is no question but that the sign frame is removable *1005 without substantial (or, in fact, any) injury to the “El” superstructure. Removing the nuts and bolts from the metal plates frees the frame and permits its easy removal. While it might be argued that the small welded metal plates are permanently affixed to the superstructure it does not follow that the sign frame which is merely bolted to those plates must likewise be deemed to be so affixed.
It would appear that the relationship between the welded plates and the sign frame might well be, in legal contemplation, analogous to the relationship between a hanging crystal chandelier in an apartment and the ceiling bracket to which it is fastened. While the chandelier is held to the ceiling bracket by a bolt arrangement, can it reasonably be said that the chandelier thereby becomes a part of the realty? It would seem not.
Even what would appear to be more clear cases of “affixation” have been found not to be so by the courts. Seats in a baseball stadium have been held to be personal property (People ex rel. National Exhibition Co. v Miller, 263 App Div 799, affd 288 NY 698). Similarly, bowling alleys which could be removed by “withdrawing nails and screws and cutting them into sections” were found to be personalty (Matter of Bronxville Bowling Club v Schmiedel, 289 NY 666). In New York Yankees v Tax Comm. of City of N. Y. (74 Misc 2d 752), the court went so far as to hold that signs, scoreboards, floodlights, and flagpoles, inter alla, were personal property.
Respondent seeks to avoid the impact of the baseball stadium cases by asserting that the opinions do not reveal the characteristics of the personalty involved and the basis for the court’s conclusion. With respect to stadium seats and the other equipment involved, intensive analysis of their characteristics are not required. It is obvious that, if anything, they are more “affixed” than the sign frames with which we are here concerned. All that is needed to separate the sign frames from the railroad superstructure is to remove the bolts from the metal plates. The fact that the lowering of the sign frame to the ground in a populated area requires care and is somewhat cumbersome and relatively more time consuming does not change the fact that it is a *1006 relatively simple process to separate the sign frame from the superstructure.
Also set forth by the Court of Appeals as a test of determining “affixation” was the intention of the parties in that respect. In making such determination, the best source of information on that score is the actual agreement entered into between the petitioner and the Authority.
The agreement provided that the Authority had the right, at the termination thereof, to acquire title to the signs, either without payment after the cost of the signs had been fully amortized, or by a payment of the unamortized portion of that cost. In the event, however, that the Authority elected not to acquire ownership of the signs, the petitioner had the obligation of removing the signs. Additionally, if the Authority found the signs to present danger or a source of annoyance to the public, it could order forthwith removal, correction or relocation. Petitioner was also given the option of removal and relocation if the advertising revenues were deemed insufficient.
Respondent’s only argument on the “intention” question would appear to be that the actual history of the sign frames as concerned “removal” is of more value in determining such intention than is the contractual language. In this connection it is pointed out that over 90 % of the installations have been in place since 1975 and of those, 53% have been in place since at least 1965. It is 'then argued that such statistics demonstrate an intention that the frames were to be permanent installations. Such an argument is patently without merit. Even had all the signs been in place since their installation without removal, that would not change the fact that the likelihood of their removal, at the termination of the agreement, was clearly contemplated by the parties thereto as spelled out in the agreement itself. The fact that the agreement has not yet terminated is the reason no mass removals have as yet taken place, and not because the signs were intended by the parties to be “affixed”. Additionally, even adopting the figures supplied by the respondent, it is evident that a substantial number of installations have indeed been removed over the years.
As a result, the court is of the opinion that the application *1007 of the Court of Appeals standards requires a conclusion that the sign frames are not only not “affixed” to the superstructure, but that it was also the clear intention of the contracting parties that they not be deemed to be so “affixed”.
The respondent also argues that, in any event, the petitioner should be estopped to assert that the sign frames are not real property. It alleges that in a condemnation proceeding in Queens County (Matter of City of New York [Metromedia, Inc.], 45 AD2d 874, aifd 36 NY2d 701), the petitioner sought compensation for like sign frames asserting that they were affixed to the realty.
It is not quite clear from the papers presented whether, in that case, the petitioner actually sought compensation for the billboards as part of the realty or merely sought additional compensation for the land by reason of its value as an advertising site. However, whatever might have been the true position of the petitioner in that case, the result here would be the same. First, the billboards involved in the Queens proceeding were erected directly upon the land by means of concrete footings installed well into the ground. As a result, they are physically dissimilar from the instant frames with respect to the question of affixation. Second, unlike the instant case, there was absent in the condemnation proceeding, any agreement from which there could be divined- the intention that the billboards not be considered as part of the realty. And third, even were the circumstances similar, it is doubtful that estoppel would apply as respondent seeks to apply it. The Queens matter was a completely unrelated proceeding. Further, petitioner’s position in Queens revolved about an opinion as to the law and did not deal with factual questions. In such circumstances, estoppel is inapplicable (London v Hammel, 32 AD2d 639, revd on other grounds 27 NY2d 630).
In light of the court’s conclusion as to affixation, intention and estoppel, it is not essential to a decision herein that the other points raised on the motions be addressed. However, it is the court’s view that it might be useful to deal with some of these other points to some degree.
Petitioner urges that even if common-law “affixation” *1008 is found, the sign frames are still not taxable because they are expressly excluded from the definition of taxable real property by reason of the language in section 102 (subd 12, par [f]) of the Real Property Tax Law. The court does not agree that such section affords an exemption to the sign frames. It is there provided that the property to be exempted must be “movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential”. The sign frames clearly are neither “machinery” nor “equipment consisting of structures or erections to the operation of which machinery is essential.”
Petitioner also argues that the failure of the city to levy real estate taxes upon the sign frames over an extended period of time (from 1965 to 1974) creates a presumption that the particular property is not taxable. That such presumption arises in certain fact situations is clear (Matter of Consolidated Edison of N. Y. v State Tax Comm., 24 NY2d 114, 119). It is the court’s view, however, that, in all the circumstances of this case, the failure to seek to tax the sign frames as real property for a period of some nine years (as opposed to 53 years in the Consolidated Edison case) does not give rise to the presumption.
The last point raised by petitioner to be discussed is the contention that, in any event, the sign frames are exempt by reason of the over-all statutory exemption from real property taxation granted to the Authority (Real Property Tax Law, § 406, subd 1).
Essentially, petitioner argues that the sign frames are “beneficially owned” by the tax exempt Authority or the City of New York, and therefore are exempt from taxation. Respondent does not disagree with the general proposition that if the sign frames are indeed beneficially owned by either the Authority or the city, they may not be taxed. However, it is its position that the beneficial ownership is in the petitioner and, that being so, the exemption is inapplicable and the sign frames are taxable (Matter of National Cold Stor. Co. v Boyland, 16 AD2d 267, affd 12 NY2d 808).
The distilled teaching of the National Cold Storage case would appear to be to the effect that the “beneficial owner *1009 ship” question is to be resolved essentially by reference to the provisions of the agreement between the parties involved with the “ownership” of the alleged taxable property. The instant agreement clearly does not give to the petitioner any absolute right to retain the sign frames. The Authority is given the absolute power to determine whether title shall vest in the city or whether the frames shall be returned to the petitioner. At most, in the event the frames are taken by the Authority for the city, the petitioner has the right to receive payment of the unamortized portion of the cost of the frames so taken. However, if such cost has been fully amortized at the time of the taking, no payment is required to be made.
In such circumstances, it is the court’s view that the agreement sufficiently divested petitioner of his “beneficial ownership” to a point where that ownership is in the Authority and/or the city. That being so, and were it necessary to reach the question, it would appear that the petitioner could not be taxed as the owner of the sign frames.
Accordingly, the petitioner’s motion for summary judgment is granted, the respondent’s cross motion is denied, and the relief sought in the petition is granted to the extent that the assessments sought to be reviewed are found to be invalid in that the property on which the tax is imposed is found not to be taxable as real property.